IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:12-cr-00542-JO |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD ALLEN McELROY, | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____

JONES, J.

     Defendant Edward Allen McElroy moves to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255. Def.'s Mot. for Relief, ECF No. 163. Defendant was convicted of child pornography offenses after a jury trial and received a 37-year sentence. For the following reasons, I DENY Defendant's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Defendant's Conduct

     Defendant encountered the victim, a girl referred to here as CMG, through an adult online dating website, iHookup.com, on September 5, 2011. Defendant was then 47 years old. CMG was 13 years old.

CMG initially contacted Defendant through his email address, which was included in his profile. Defendant responded by asking CMG for more information about herself. She responded, "Im 13 btw I hope u don't mind." Gov't Resp. 3 (quoting Gov't Trial Ex. 1A at 1), ECF No. 171.

Later that evening, Defendant and CMG resumed their online conversation. CMG asked whether Defendant wanted to "hook up some time." *Id.* Defendant responded, "sounds good," and asked when would be a good time to meet. *Id.* CMG replied, "as long as ur fine with my age im very happy wb tomarrow??" *Id*. (quoting Gov't Ex. 1A at 2). Defendant responded, "so you like older men? what did you have in mind? What time tomorrow? are you on messenger? your age is fine." *Id.*

Defendant and CMG continued their conversation on Yahoo's Instant Messenger. Their exchange became explicitly sexual. At Defendant's prompting, CMG turned on her web camera and undressed and posed for him. CMG masturbated on camera, and Defendant sent CMG a photo of his erect penis. Near the end of the conversation, Defendant asked CMG to turn on the web camera again, and he took screen shots of her in sexual poses. These photos were the basis for the production charge against Defendant. Defendant wrote to CMG, "can hardly believe your 13 and want to f___ like that." Gov't Resp. 7 (citing PSR ¶ 19). They agreed to meet the next day at a playground near the Sherwood Middle School.

Around noon, Defendant drove to Sherwood to meet CMG for sex. Gov't Resp. 8 (citing PSR ¶ 20). After exchanging text messages with Defendant, CMG became scared and decided not to meet him. Defendant demanded to know why CMG was reluctant to meet, and she threatened to call the police if he did not leave. When Defendant suggested

a conversation later, CMG asked that he "just stop talking to me please" and said, "i feel sick." *Id.* Defendant was frustrated by CMG's refusal to continue their online interactions. He threatened to tell her mother and circulate pictures to her school, apartment, and the internet. Gov't Resp. 8 (citing PSR ¶ 21).

After the aborted meeting, Defendant taped a note to the front door of CMG's apartment. The note, dated September 6, 2011, included non-pornographic screen shots of CMG, and a message, "Hello [CMG], Looking a little bored there girl. Maybe you should go find your curling iron. That seems to make you happy!" Gov't Resp. 8 (citing PSR ¶ 9 and Gov't Trial Ex. 3). CMG's mother found the note on the door.

On October 26, 2011, Defendant sent CMG an email with the subject line, "Should be you!" Gov't Resp. 9 (citing PSR ¶ 22). Along with a brief message, Defendant attached two sexually explicit images and a video of an adolescent girl performing oral sex on an adult male. On November 4, 2011, Defendant sent CMG an email that included three images of erect penises and a video of Defendant masturbating. Gov't Resp. 9 (citing PSR ¶ 23).

In early November 2011, CMG's mother reported to the police that she had found sexually explicit images on CMG's computer. CMG told an officer about her interactions with Defendant. CMG's mother gave the officer CMG's computer, and later consented to officers using CMG's online identity. *Id.* (citing (citing PSR ¶ 9).

Detectives with the Sherwood Police Department and the Washington County Sheriff's Office used CMG's online identity to converse with Defendant. Defendant sent child pornography to one of the detectives. The detective, using CMG's identity, arranged to meet Defendant at a park in Sherwood on November 9, 2011. Defendant was

arrested when he arrived at the park.  He had brought condoms, a six-pack of hard lemonade, and a prepaid cell phone containing messages to and from the detective posing as CMG.

Immediately after his arrest and being given his rights, Defendant told the arresting detectives that he thought CMG was 18, although she could have been 13.  He said that if she appeared to be only 13 when he met her, he planned to leave the park without having sex with her.  Defendant said he thought CMG was "playing around" when she told him she was 13.  Gov't Resp. 10 (citing PSR ¶ 26).  He claimed that although he had seen CMG nude on the web cam, the lighting was poor so he could not see her well.  Defendant admitted taping the note on CMG's apartment door and sending her child pornography.  A search of Defendant's computers revealed the sexually explicit screen shots of CMG, as well as child pornography depicting other children, including the videos he sent to CMG.

## II.  Judicial Proceedings

Defendant was initially charged in state court.  In October 2012, a federal grand jury returned an indictment against Defendant, charging him with one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); one count of online enticement of a minor in violation of 18 U.S.C. § 2422(b); one count of attempted transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1); two counts of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  ECF No. 1.  The indictment included two criminal forfeiture allegations.  Finally, the indictment included a Notice of Enhanced Penalty, alleging that

because Defendant had a prior Oregon state conviction for two counts of first-degree sexual abuse of an eight-year old girl, he would be subject to a mandatory sentence of life in prison under 18 U.S.C. § 3559(e) if convicted on the production charge.

Defendant made his initial appearance on November 19, 2012.  ECF No. 9.  Ellen Pitcher, an Assistant Federal Defender, was appointed to represent him.

In October 2013, Pitcher moved to withdraw as Defendant's attorney at Defendant's request.  ECF No. 27.  The court granted her motion and appointed attorney Per Olson to take her place.  ECF No. 31.

The jury trial began April 29, 2014, with Judge Marco Hernandez presiding.  On the third day of trial, after the government rested, Defendant notified the court that he wanted to represent himself.  Olson Decl. ¶ 2, ECF No. 171-5.  After holding a *Faretta*[1] hearing, the court granted Defendant's request.  ECF No. 77.  The next day, May 2, 2014, the jury returned guilty verdicts on all counts.  ECF Nos. 78, 88.  After a brief bench trial, the court decided not to apply the life-imprisonment sentencing enhancement under 18 U.S.C. § 3559(e).  ECF Nos. 79, 91.

On May 13, 2014, the court granted Defendant's oral motion to reinstate Olson as his attorney.  ECF No. 94.  Olson represented Defendant at the hearings on sentencing and restitution.  Olson Decl. ¶ 2.

On December 8, 2014, the court sentenced Defendant to 37 years' imprisonment, followed by a life term of supervised release.  ECF Nos. 115, 116.  In April 2015, the court imposed restitution of $20,152.51.  ECF Nos. 137, 141.

---

[1]  *Faretta v. California*, 422 U.S. 806 (1975).

On appeal, another attorney represented Defendant.  The Ninth Circuit affirmed the convictions, and the Supreme Court denied certiorari.  *United States v. McElroy*, 729 F. App'x 612 (9th Cir. July 6, 2018), *cert. denied*, __ U.S. __, 139 S. Ct. 1210 (Feb. 19, 2019).  Defendant, representing himself, then filed this timely motion for relief from the sentence.

## LEGAL STANDARDS

### I.  Motions Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner in custody on a sentence after conviction may move the court that imposed the sentence to vacate, set aside, or correct the sentence because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a).  To prevail on a motion under § 2255, a defendant must show that an error of constitutional magnitude occurred and that the error had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

### II.  Ineffective Assistance of Counsel

To prevail on a claim for ineffective assistance of counsel, a defendant must show that his attorney's performance was unreasonable under the prevailing professional standards and that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 694-95 (1984).  If the defendant fails to show either incompetent performance or prejudice, the court "must dismiss the claim." *United States v. Sanchez-Cervantes*, 282 F.3d 664, 672 (9th Cir. 2002).

There is a strong presumption that counsel's conduct is reasonable. *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995). "Review of counsel's performance is highly deferential." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986). The court "must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Gulbrandson v. Ryan*, 738 F.3d 976, 988 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland,* 466 U.S. at 693). Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

## DISCUSSION

### I. Ellen Pitcher's Representation of Defendant

#### A. Claim Regarding Pitcher's Motions to Continue Trial Date

##### 1. Facts

Defendant was initially charged in state court. After Defendant was charged with federal crimes, Pitcher was appointed to represent Defendant in November 2012. Trial was set for January 23, 2013.

On January 8, 2013, Pitcher moved to continue the trial date. In the motion, she stated that Defendant understood that the motion would result in excludable delay under

the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), and that Defendant "does not object to the continuance and requests the granting of the motion." ECF No. 16, at 2. Pitcher states by declaration that although she does not specifically recall representing Defendant, her "usual practice over the last 39 years as an attorney in criminal practice is to review any such requests with the client prior to making it." Pitcher Decl. ¶ 3, ECF No. 171-4. (In drafting her declaration, Pitcher also relied on her client file and this court's docket. Pitcher Decl. ¶ 2.) The court granted the motion for continuance, found excludable delay, and continued the trial to March 26, 2013. ECF No. 17.

On March 12, 2013, Pitcher moved for a second continuance, seeking additional time to investigate, research pretrial motions and possible defenses, and prepare for trial. ECF No. 18. Pitcher stated Defendant understood the motion would result in excludable delay, and that he "does not object to the continuance" and requests that the court grant the motion. *Id.* at 2. The court struck the trial date and set a status conference for April 2, 2013. ECF No. 19.

Defendant attended the April 2 status conference in person. After Judge Hernandez explained to Defendant the consequences of waiving his right to a speedy trial, Defendant stated that he was willing to do so. Gov't Resp., Ex. A, at 7. Judge Hernandez noted that "this is a really significant case for both sides. The consequences of being convicted are certainly huge" for Defendant. Ex. A, at 7. The court found Defendant's waiver valid and reset the trial to August 13, 2013. ECF No. 20.

On July 31, 2013, the parties jointly moved to continue the trial. ECF No. 22. Pitcher again stated that Defendant did not object to a continuance. Id. at 2. The court found excludable delay and continued the trial to November 12, 2013.

On October 30, 2013, the court granted Pitcher's motion to withdraw as counsel, based on Defendant's dissatisfaction with her representation. Trial was reset to February 25, 2014. Defendant waived his right to a speedy trial. ECF No. 31.

### 2. Discussion

Defendant claims that Pitcher did not consult with him about the first two motions for continuance and that he did not willingly waive his speedy trial rights. Def.'s Mot. 14.[2] Defendant claims that he met with Pitcher just before the April 2, 2013 status conference, telling her that he "had not waived these rights and the time limit had expired. [Pitcher] responded that she would not file a motion to dismiss, considering it to be 'frivolous.'" Def.'s Mot. 14. Defendant states that when he waived his right to a speedy trial at the hearing, he "felt coerced and compelled under duress" because of Pitcher's "adamant refusal to uphold" his rights. Def.'s Mot. 14.

Defendant also contends that Pitcher "misadvised" him about his speedy trial rights, telling him that although charges could be dismissed for speedy trial violations, the prosecutor "would just refile the charges." Def.'s Mot. 16. Defendant claims Pitcher "failed to inform" him "that a judge may dismiss the charges with prejudice, if grounds are raised properly." Def.'s Mot. 16.

In response to Defendant's allegations, Pitcher states that her practice has always been to consult with clients to obtain their consent before seeking a continuance. Her motions each stated that Defendant understood the continuance would result in excludable delay, he did not object to the continuance, and he requested that it be granted. Pitcher also attaches a letter she sent to Defendant on October 11, 2013, noting

---

[2] Citations to Defendant's Motion for Relief use ECF page numbers.

Defendant's "concerns about [his] speedy trial rights."  Pitcher Decl., Ex. 1, at 2.  Pitcher

wrote,

> I am certain that we discussed, given the seriousness of the charges and
> the lengthy sentences that would attach to convictions on each count, the
> need for more than 60 days to research, investigate, negotiate and prepare
> this case for trial.  *You never previously expressed to me your concern*
> *about how long it would take to bring this case to trial, once you were*
> *brought into the federal system.*  I certainly understand your frustration at
> the length of time you sat in state custody while the feds took their time in
> indicting you, but that is not a matter that I or any federal judge would
> have had control over.

Pitcher Decl., Ex. 1, at 2 (emphasis added).  This letter, which Pitcher wrote while she

was still representing Defendant, directly contradicts Defendant's claims that he objected

to the prior continuances.  When Defendant had the opportunity to object in person to a

continuance at the April 2, 2013 conference, he waived his speedy trial rights without

comment.  Although Defendant now claims that he felt coerced, I agree with the

government that this court "is entitled to rely on defendant's statement, made on the

record in open court."  Gov't Resp. 24 (citing *Blackledge v. Allison*, 431 U.S. 63, 74

(1977)).  I note that during the judicial proceedings, Defendant showed no reluctance to

assert what he considered to be his legal rights, regardless of the advice of counsel.

I find that Pitcher's requests for continuances were reasonable.  I agree with the

government that given the serious charges against Defendant and the weight of the

evidence against him, "rushing a case to trial without adequate time to investigate and

prepare would have been ineffective."  Gov't Resp. 25.  Defendant's speedy trial claim

fails.

**B.  Failure to Seek Suppression of Items Seized**

Defendant claims that Pitcher was ineffective in "fail[ing] to fully investigate [Defendant's] claim that the search warrant was illegally issued and failed to file motion to suppress evidence as a result."  Def.'s Mot. 15.  Defendant contends that his state court attorney advised him that the search warrant was defective under Oregon law because it lacked a judge's signature, and that Oregon law would require suppression of the evidence obtained as a result of the search warrant.

Defendant's claim fails on both the facts and the law.  The judge's signature is on the warrant, although it is not very legible.  Pitcher Decl., Ex. 1, at 13 (copy of warrant showing judge's signature).  Furthermore, on the state court's certified true copy, the judge's printed name is stamped on the signature page.  Olson Decl., Ex. 3, at 2.

Even if the warrant lacked a signature in violation of Oregon law, this court would not grant a motion to suppress unless the warrant violated the Fourth Amendment. *See United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000) ("evidence will only be excluded in federal court when it violates federal protections, such as those contained in the Fourth Amendment, and not in cases where it is tainted solely under state law"). The warrant here was supported by ample probable cause, and described the items to be seized with particularity.  Defendant has not shown any valid basis for a motion to suppress under the Fourth Amendment.

**C.  Pitcher Gave Incomplete or Incorrect Advice**

Defendant claims that Pitcher "tried on multiple occasions to pressure [Defendant] into accepting a plea deal."  Def.'s Mot. 16.  He claims Pitcher told him that if he were found guilty after trial, "then he would receive a life sentence due to an

enhancement penalty." *Id.* Defendant further claims that after he rejected several proposed plea agreements, Pitcher told him, "'If you go to trial, you <u>will</u> be found guilty and you <u>will</u> spend the rest of your life in prison.'" *Id.*

Defendant also claims that Pitcher "misadvised" him about his speedy trial rights. Defendant states that Pitcher told him the court could dismiss charges as untimely but "the prosecutor would just refile the charges. What [Pitcher] failed to inform [Defendant] is that a judge may dismiss the charges with prejudice, if grounds are raised properly." Def.'s Mot. 16. Defendant contends that grounds for dismissal with prejudice existed because CMG entered a residential drug and alcohol treatment facility in Utah on March 15, 2013, when trial was scheduled for March 26, 2013. Defendant speculates that the government "may have suggested" that CMG receive treatment at the Utah facility, or "[a]t the very least" the government knew CMG would be unavailable to testify on March 26 but did not tell Pitcher. Def.'s Mot. 17.

These grounds for relief lack merit. Any competent defense attorney would have attempted to negotiate a plea agreement because of the sentence Defendant faced if convicted, including a possible life sentence for the production count. Contrary to Defendant's allegation, Pitcher did not advise Defendant that he would necessarily receive a life sentence if convicted at trial. In fact, she drafted a motion to dismiss the production count and to strike the sentencing enhancement allegation. She sent copies of the draft motion to the Assistant U.S. Attorney and to Defendant. Pitcher Decl. ¶ 5 & Ex. 1, at 31-45 (copy of draft motion). She did not file the motion because she was "still pursuing the possibility of a plea agreement." Pitcher Decl. ¶ 5.

As to Defendant's speculation that the government was somehow complicit in CMG's absence to receive treatment in Utah, the government states, "Nobody from the government played any role" in the decision.  Gov't Resp. 27.  At the restitution hearing, CMG's father testified that he and CMG's mother researched possible treatment facilities extensively before deciding on the Utah facility.  Gov't Resp., Ex. C, at 3.  The government states that neither parent consulted with the government about their decision, and that had the government known, and had the case gone to trial in March 2013, "the government would have asked CMG's parents to delay her entry into the program for a few days so she could testify" at the trial.  Gov't Resp. 28.  If CMG's parents could not delay her admission into the facility, the government would have moved for a continuance, which the court was likely to grant because CMG was receiving treatment at least in part because of Defendant's criminal conduct, as the court later found in setting restitution after trial.  Dismissal with prejudice would have been very unlikely, even if Defendant had not waived his speedy trial rights.  Similarly, Defendant cannot show prejudice from Pitcher's attempts to reach a plea agreement because Defendant rejected the government's plea offer and chose to go to trial.

## II.  Per Olson's Representation of Defendant

### A.  Failing to Challenge Veracity of Search Warrant Affidavit

Defendant claims that Olson failed to challenge the affidavit filed by a detective in support of the search warrant, which Defendant alleges contained false statements and misleading omissions.  Defendant contends that Olson relied on the research memorandums received from Pitcher.

Olson responds that he did his own independent legal and factual research, and did not rely on Pitcher's prior work. He states, "I thoroughly investigated and researched all of the issues [Defendant] brought to my attention in order to determine whether the issues he presented as state law violations could also be characterized as federal constitutional violations." Olson Decl. ¶ 12. Olson concluded that there were no "federal constitutional violations in the manner in which the warrant was obtained or executed." *Id.* Olson explained his conclusions in a letter to Defendant.

Regarding the judge's signature on the warrant, Olson concluded that the judge was properly identified in the official copy of the warrant. Olson found that "the court's staff provided the police officer with a copy of the signed warrant before it had been stamped with Judge Wipper's printed name, and the un-stamped version made its way into the discovery." Olson Decl. ¶ 13. I agree with Olson that there was no possible support for a motion to suppress based on the judge's signature on the warrant.

Regarding the alleged false statements and omissions in the detective's affidavit, Olson notes that Defendant did not raise these issues until June 11, 2014, more than a month after the jury returned its guilty verdict. Olson nevertheless analyzed the issues because "a motion for new trial could theoretically address a post-trial challenge to the search warrant." Olson Decl. ¶ 16. After completing his analysis, Olson found no viable basis to file a motion to suppress.

Defendant claimed that the warrant affidavit failed to accurately describe the nature and scope of the consent CMG and her mother gave to law enforcement so the officers could assume CMG's identity on Yahoo. Olson found that the child and mother had "clearly" consented, and the alleged omissions were not "remotely material to

probable cause." Olson Decl. ¶ 16(a). Furthermore, Defendant did not have standing to object that the detectives "somehow exceeded the bounds of consent given by CMG and her mother to assume CMG's online identity and communicate with the suspect." Olson Decl. ¶ 16(a); *see Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (Fourth Amendment rights "'may not be vicariously asserted'") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

Defendant cited the affiant's failure to mention CMG apparently did not open an email Defendant sent her that contained child pornography. However, as Olson correctly determined, CMG's failure to open the email was completely irrelevant because Defendant did in fact send child pornography, which was the offense. Olson Decl. ¶ 16(b).

Defendant cited the affiant's failure to state that (1) CMG represented herself to be 18 so she could establish a profile on the iHookup site, or that (2) CMG "told" Defendant she was 13 in an email, rather than in person or by voice. Olson determined that these omissions were also irrelevant because the affidavit accurately stated that CMG initially met Defendant on iHookup and then communicated with him through Yahoo messaging and email, and that CMG told Defendant that she was 13 "during their on-line contact." Olson Decl. ¶ 16(c).

Defendant claims that the affidavit does not specifically state that CMG represented herself to be 18 to establish her profile on iHookup. Olson found this omission immaterial because CMG specifically told Defendant that she was 13. Olson Decl. ¶ 16(d). In addition, "probable cause to search defendant's home and computers did not turn entirely on the suspect's knowledge of CMG's age" because the affidavit

also described pornographic videos of other minors that Defendant sent or attempted to send to CMG's email address, providing probable cause for the Oregon state offense of Encouraging Child Abuse.  Olson Decl. ¶ 16(d) (citing Or. Rev. Stat. §§ 163.684, 163.686).

Defendant claims that the affidavit fails to mention that the suspect's attempted meeting with CMG on November 9, 2011 "was a sting operation" set up by the detectives.  Olson found that this omission did not affect probable cause.  Furthermore, Olson believed the affiant was actually describing the prior chats between CMG and the suspect, in which they planned to meet in September 2011.  This is the meeting that CMG decided not to attend.  Olson Decl. ¶ 16(e).

Olson concluded that he found no material false statements or omissions in the affidavit that would justify a *Franks*[3] hearing or a motion to suppress.  I agree.  To obtain a *Franks* hearing, the defendant must show that "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and that "the false or misleading statement or omission was material, *i.e.*, necessary to find probable cause."  *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019).  Here, Defendant has failed to meet either element of the test.

When Defendant represented himself on the last day of trial, he called the affiant as a witness to question him about the asserted omissions in the affidavit.  Defendant introduced the affidavit into evidence.  However, the affidavit identified Defendant as a registered sex offender, a fact that Olson had successfully excluded.  As the government

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

argues, this unforced error prejudiced Defendant far more than anything Olson did or did not do during the trial.  Gov't Resp. 32.

### B.  Failure to Call Expert Witness at Trial

Defendant argues that Olson should have called an expert witness, Wendy Votroubek, an expert on childhood physical development.  Defendant contends that Votroubek's testimony and reports "would have raised reasonable doubts as to [Defendant's] knowledge of CMG's actual age."  Def.'s Mot. 21.

Olson hired Votroubek to review the screen shots Defendant took of CMG and to give her opinion of CMG's apparent age based on the screen shots.  After viewing the screen shots, Votroubek initially opined that CMG appeared to be 15 years old or older based on visible breast development.  Olson Decl. ¶ 7; Ex. 1.  The screen shots of CMG's pubic area were too dim and indistinct to draw a firm conclusion.  After reading Votroubek's first report, Olson was inclined to call her as a witness because her testimony about breast development could support Defendant's assertion that he thought CMG was an adult.  Olson Decl. ¶ 7.  However, after researching the issue further, Votroubek questioned her conclusions.  She viewed the screen shots again and issued a second report.  In the second report, she revised her opinion, concluding that CMG's appearance corresponded to a person between 10 and 15 years old.  Olson Decl. ¶ 7; Ex. 2.

Based on Votroubek's revised report, Olson decided not to call her as a witness. Although Votroubek did state that a person with CMG's breast development could be an adult, Olson believed that the government could use her testimony to bolster the argument that CMG appeared to be under 18 years old.  Instead, Olson decided to rely on

asking the jurors to reach their own conclusions based on the images. Olson states that he discussed his concerns about Votroubek's testimony with Defendant before trial, "and he did not voice any objection to [Olson's] decision not to call her as a witness." Olson Decl. ¶ 10.

I conclude that Olson made a wise tactical decision not to call Votroubek as a witness. There was no ineffective assistance on this issue.

### C. Ineffective Assistance at Restitution Hearing

Defendant claims that he was denied effective assistance of counsel at the restitution hearing. Defendant contends that Olson failed to present evidence that CMG's conduct began to change for the worse before her interaction with Defendant, and that CMG's father, the only witness at the hearing, was unaware of these changes.

First, Defendant may not collaterally attack a restitution order in a § 2255 motion. *See United States v. Thiele,* 314 F.3d 399, 400 (9th Cir. 2002) ("§ 2255 is available to prisoners claiming the right to be released from custody. Claims for others types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody.").

Furthermore, a reading of the transcript of the restitution hearing shows that Olson performed very well. He thoroughly cross-examined CMG's father, raising many of the factual issues Defendant notes in his motion.

Defendant takes a comment by Judge Hernandez out of context, quoting the judge saying to Olson, "You had trouble with the argument." Def.s' Mot. 24. However, the transcript shows that Judge Hernandez was not criticizing Olson's argument. Near the end of the hearing, when Olson mentioned the amount of restitution requested, Judge

Hernandez stated, "Well, Mr. Olson, I'm sorry to interrupt you, but I assume you didn't have trouble with the math; you had trouble with the argument."  Gov't Resp., Ex. C, at 40.  Olson responded, "Right," and the judge replied, "And I didn't do the math.  I'm assuming the math is correct."  *Id.* at 41.  In other words, Olson was arguing against the basis for the government's requested restitution, and not against the calculation of the amount.  Even if Defendant's claim as to the restitution hearing was cognizable, there was no ineffective assistance of counsel.

### III.  No Evidentiary Hearing Is Necessary

Section 2255(b) provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Here, I conclude that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  The record includes the relevant hearing transcripts, declarations from defense counsel, and supporting documents and exhibits.  Defendant has not earned the right to hearing by alleging "specific facts which, if true, would entitle him to relief."  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).  I therefore deny an evidentiary hearing.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

I DENY Defendant's motion to Vacate, Set Aside or Correct his Sentence under

28 U.S.C. § 2255.  ECF No. 163.

IT IS SO ORDERED.

DATED this 24th of July, 2020.

/s/ Robert E. Jones
Robert E. Jones
United States District Judge
